COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Coleman and Bray
Argued at Richmond, Virginia


JACOB COLES SMALL
                                    MEMORANDUM OPINION* BY
v.   Record No. 1630-98-2    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                       DECEMBER 28, 1999
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF HENRICO COUNTY
                         George F. Tidey, Judge

             Christopher H. Macturk for appellant.

             Steven A. Witmer, Assistant Attorney General
             (Mark L. Earley, Attorney General, on brief),
             for appellee.


     Jacob C. Small (appellant) was convicted in a bench trial

of possession of marijuana, in violation of Code § 18.2-250.1.

He contends the trial court erred by denying his motion to

suppress evidence obtained during a warrantless search of his

residence.[1]  For the following reasons, we reverse and dismiss.

_____

     * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

     [1] Appellant also argues on brief that his verbal statements
and physical actions were the result of an unlawful custodial
interrogation in violation of the requirements of Miranda v.
Arizona, 384 U.S. 436 (1966).  Because we hold that the initial
entry was unlawful and that the unlawful entry led to the seizure
of the marijuana smoking pipe, we do not reach this issue.

I.

During an investigation of an unrelated crime, Officer J.S. Bond (Bond) interviewed appellant and Adam Rizor (Rizor).[2] After speaking with them, Bond learned that their driving privileges had been suspended, but that Rizor was suspended without notice. Bond went to appellant's residence, where he knew Rizor was staying, to serve the notice of suspension.

Arriving at appellant's home, Bond knocked on the front door. According to the agreed statement of facts,

> Rizor opened the door and a friendly and casual conversation ensued. Bond advised Rizor that his license was suspended and told him he had to go through the procedures associated with giving notice of the suspension of license. During this conversation, which was happening within the open doorway, Rizor reached for his driver's license and pulled it out, and took one step back. Bond had to take the driver's license from Rizor, pursuant to the giving of notice of suspension of license and Bond took one step towards Rizor. Bond was one step into the residence. Bond did not request an invitation or permission.

(Emphasis added). Upon entering the home, Bond saw appellant walking from the back of the residence and "immediately detected the distinct odor of marijuana."

Bond asked, "[W]ho's been smoking[?]" Rizor pulled a bag of marijuana out of his pocket and stated, "I have." Bond directed Rizor and appellant to sit down while he called for

---

[2] The record does not contain a transcript of the trial, but includes a written statement of facts signed by the trial judge.

-

backup to assist the investigation.  Rizor was handcuffed, read

his Miranda rights, and arrested.  Bond then asked, "was there

anymore."  Appellant walked to the back patio and "pointed to a

blue smoking device."  Appellant admitted it was his, but said

that he was holding it for Rizor.  Appellant was given a summons

for possession of marijuana.

Appellant's motion to suppress the evidence was denied by

the trial court, and appellant was convicted of possession of

marijuana.

## II.  WARRANTLESS ENTRY[3]

On appeal, it is the defendant's burden to show "that the

denial of [the] motion to suppress constitute[d] reversible

error."  Motley v. Commonwealth, 17 Va. App. 439, 440-41, 437

S.E.2d 232, 233 (1993).  "Ultimate questions of reasonable

suspicion and probable cause to make a warrantless search

involve questions of both law and fact and are reviewed de novo

on appeal."  McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487

S.E.2d 259, 261 (1997) (en banc) (citation omitted).

"Although the Fourth Amendment permits law enforcement

officers to make warrantless arrests in public places upon

probable cause, warrantless entries into a suspect's home in

---

[3] As a procedural matter, the Commonwealth argues that the
record before us is defective because the written statement of
facts was not properly filed with the trial court.  By order dated
July 16, 1999, another panel of this Court rejected that argument
and, therefore, we do not address it here.

-

order to arrest a suspect violate the Fourth Amendment unless justified by exigent circumstances or consent." Jefferson v. Commonwealth, 27 Va. App. 1, 14, 497 S.E.2d 474, 480 (1998). Because warrantless entries are presumed invalid, the Commonwealth has a heavy burden to justify the warrantless entry. See Jones v. Commonwealth, 29 Va. App. 363, 369, 512 S.E.2d 165, 167 (1999). "Unless an exception is shown by the evidence, . . . , the threshold of one's home may not be crossed without a warrant." Id. at 368, 512 S.E.2d at 167 (citing Payton v. New York, 445 U.S. 573, 590 (1980)). No exception exists in this case.

The Commonwealth concedes that there was no valid consent to enter appellant's home and that no probable cause and exigent circumstances were present to validate the intrusion. Rather, the Commonwealth argues that under the facts presented the officer's actions were reasonable. The Commonwealth contends that because the officer was performing a civil function in serving the notice of suspension on Rizor, the intrusion into the home was minimal and did not violate the Fourth Amendment's prohibition against unreasonable searches and seizures. The Commonwealth cites no cases for this proposition.

Contrary to the Commonwealth's theory, the warrantless entry into appellant's home, even if reasonable under the circumstances, must be supported by an exception to the Fourth Amendment. Here, the undisputed evidence proved that Officer

-

Bond did not ask for or receive appellant's consent to enter his home. The fact that appellant's front door was open did not constitute an invitation for the officer to enter. See Walls v. Commonwealth, 2 Va. App. 639, 645, 347 S.E.2d 175, 178 (1986). Additionally, no probable cause and exigent circumstances existed. See Washington v. Commonwealth, 29 Va. App. 5, 14-15, 509 S.E.2d 512, 516-17 (1999) (protection of an officer's safety); Commonwealth v. Talbert, 23 Va. App. 552, 557, 478 S.E.2d 331, 334 (1996) ("hot pursuit" of a suspect); Hill v. Commonwealth, 18 Va. App. 1, 3, 441 S.E.2d 50, 51 (1994) (strong belief that a suspect was present). Accordingly, the officer's entry and subsequent search of the home violated appellant's Fourth Amendment rights.

Lastly, the Commonwealth contends that this case is controlled by United States v. Santana, 427 U.S. 38 (1976), because Officer Bond was performing a lawful duty. In Santana, the police made a controlled heroin purchase. The officers returned to the defendant's residence and saw her "standing in the doorway of her house." Id. at 40. As the police approached and announced themselves, the defendant "retreated into the vestibule of her house" where the officers arrested her. Id. at 40-41. The Supreme Court held that the warrantless entry by the police into the vestibule of the house was a true "hot pursuit." Id. at 42-43. In the present case, Officer Bond did not have probable cause to arrest appellant, he was not in hot pursuit of

-

a known suspect, and the incriminating evidence was obtained as a direct result of the warrantless entry into the residence. The rationale of Santana is inapplicable to this case.[4]

We hold that because the Commonwealth failed to establish a consensual entry or any other exception to the Fourth Amendment, Officer Bond's entry into appellant's home was unlawful and the trial court erred in refusing to grant the motion to suppress the evidence. Accordingly, appellant's conviction is reversed and dismissed.

Reversed and dismissed.

---

[4] Lowe v. Commonwealth, 218 Va. 670, 239 S.E.2d 112 (1977), also cited by the Commonwealth, is factually distinguishable. In Lowe, the Supreme Court specifically held that "an exigency existed justifying the warrantless arrest" because the delay in obtaining a warrant would have "increas[ed] the danger of further violence to the police themselves and to the community at large." Id. at 677, 239 S.E.2d at 117.

-